WAYNE WALTRIP, Plaintiff, Counter-Defendant, Appellant, *v.* DONNA MARIE WALTRIP, Defendant, Counter-Plaintiff, Appellee.

(No. 71-91;

Second District—February 15, 1972.

SEIDENFELD, J., dissenting.

McHugh & Farris, of River Grove, for appellant.

James C. Kellogg, of Chicago, for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

Wayne Waltrip filed suit for divorce against Donna Marie Waltrip in July, 1969. Thereafter, through counsel, she filed an answer and a counterclaim for divorce. Late in January, 1970, a hearing was held at which time an oral property settlement agreement, as well as an agreement on child support for four children and alimony for the wife were testified to and were incorporated into the divorce decree granted on the wife's counterclaim. The agreement as to alimony and child support was that Waltrip would pay to Mrs. Waltrip $28 per week alimony and a total of $112 per week child support for four minor children. This agreement as to alimony and support was based upon a representation of Waltrip that he was employed as president of the Walson Construction Company, hereinafter referred to as Walson, and received a salary of $350 per week. At the hearing, Waltrip testified as to his salary but was not asked as to whether or not he had any other income.

On September 21, 1970, Mrs. Waltrip filed a petition which recited a finding in the decree that Waltrip was employed as president of Walson at a gross salary of $350 per week and that based upon this representation it was decreed that he pay to her the alimony and child support hereinabove stated. Continuing, the petition stated that subsequent to the entry of the decree, and during the month of June 1970, she received information that Waltrip received during the calendar year 1969 as president, officer and employee of Walson a year-end bonus of $10,000; that therefore the representation made by the plaintiff at the hearing and to the court was false; and that the amount of alimony and child support should be increased retroactive to the date of the entry of the decree. Waltrip answered by denying there was any false representation made at any time to the petitioner, denied that she is entitled to an increase

of alimony and child support, and prayed for dismissal of the petition for want of equity because she had failed to allege any change in circumstances that would entitle her to additional alimony or child support.

Thereafter, on December 11, 1970, the court entered an order that Waltrip pay to Mrs. Waltrip $1,800 and to furnish her pertinent information each year, within 30 days after Walson books are closed, as to his previous year's income from Walson. Soon thereafter, Waltrip filed his notice of appeal. Thereupon, Mrs. Waltrip filed another petition stating that she was without resources or income to retain counsel to defend the appeal and asked that the court order the plaintiff to pay her reasonable attorney's fees to defend the appeal pursuant to section 15 of the Divorce Act. (Ill. Rev. Stat. 1969, ch. 40, par. 16.) On that petition coming on to be heard, the attorney for Mrs. Waltrip offered to have her testify and stated she would testify that she was without resources or income to retain counsel to defend the appeal. Thereafter, the court entered an order that Waltrip pay Mrs. Waltrip the sum of $500 for attorney's fees and costs in defending the appeal. The entry of this last order resulted in Waltrip amending his notice of appeal to add an appeal from the order just mentioned.

■■ Waltrip challenges the sufficiency of Mrs. Waltrip's petition for increased alimony and child support and states that it fails to state a cause of action either as a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 72) or section 18 of the Divorce Act. (Ill. Rev. Stat. 1969, ch. 40, par. 19.) He also presents the issue of whether there were either allegations and proof of fraud by him as required in section 72 proceedings, or whether there were allegations and proof of changed conditions and circumstances sufficient to justify a modification of the original decree if the petition is considered as filed pursuant to section 18 of the Divorce Act. A divorce decree is final as to the circumstances and conditions of the parties as of the date of its entry, and a court, therefore, can only consider such changes that have occurred subsequently. *Green v. Green*, 86 Ill.App.2d 362, 364.

Testimony of Waltrip on the petition of Mrs. Waltrip for increased alimony and child support reveals that in April, 1970, he and his business associate, who was his wife's brother, each took $13,230 in cash from the company. His testimony was that on advice of their accountant these withdrawals resulted from funds which, in July of 1969, had been declared payable to each as a year-end bonus at the end of the 1968-1969 fiscal year. He further testified that due to the requirements of their business he and his brother-in-law had loaned the money back to the company and never took any of it until April, 1970. Therefore, at the time of negotiations between the parties who were represented by

counsel, the ledgers of Walson indicated that Waltrip was to receive additional compensation although those entries at that time were only bookkeeping entries and had not resulted in actual withdrawal of any more than $350 per week gross salary by Waltrip.

Prior to the entry of the order wherein Waltrip was ordered to pay Mrs. Waltrip $1,800, the judge stated that there was no fraud or concealment on the part of Waltrip. The judge also stated that the particular income involved, the bonus for the year 1969, which was declared in 1969 but not paid until April, 1970, was not such a regular and predictable income as would justify the court in setting up a new schedule of weekly payments either for child support or alimony.

Waltrip contends that the petition filed by Mrs. Waltrip was a petition filed under section 72 of the Civil Practice Act and, therefore, presented a new cause of action. A reading of the petition indicates that it was not filed under section 72 of the Civil Practice Act but is rather a petition to modify child support and alimony under section 18 of the Divorce Act. Although it does not state a change of condition and circumstances on the part of the children and the ex-wife, it does allege a change of circumstances as to his income which he received after the divorce for the year prior to the divorce. Waltrip contends that the court could not grant an increase in support for either the ex-wife or the children because the change in their need was not stated in the petition. We have previously noted that the court did not order increased weekly payments for either child support or alimony. The judge, in addition to other remarks noted as being made prior to ordering the husband to pay $1,800 to his ex-wife, stated that that income was in the nature of unusual income and it appeared that the time to actually receive it had been planned to avoid the impact of taxes and to aid the corporation in its business requirements, so that the amount of the bonus declared by the corporation on the books in 1969 was not paid until April, 1970. He remarked further that the State was interested in all divorce cases, particularly where children were concerned, and that although the husband was not guilty of fraud, an inequity existed because the agreement for child support and alimony was made prior to the entry of the decree when Mrs. Waltrip thought he had an income of approximately $18,000 for the year 1969 rather than the income of $31,000 which he finally received as compensation from the corporation for his services for the year 1969 but after the divorce was granted. The facts in this case, therefore, are different from the ordinary case where a petition is filed after the divorce for increased child support and alimony.

■■ The evidence is that prior to the date of the decree of the divorce, and when both parties were represented by counsel, the records of

Walson contained the bonus declaration in 1969. Waltrip says that these corporate records were available for inspection by Mrs. Waltrip; that she knew he was president of the corporation and owned at least 50 per cent of the stock; and that the only other corporate shareholder was her brother. Waltrip says that Mrs. Waltrip should not now be permitted to say that she did not know what his income was in connection with the corporation and permit her to close her eyes and not take advantage of her right to inspect the records of the corporation which a person of ordinary prudence in her position would have done. Waltrip cites the case of *Plavec v. Plavec,* 30 Ill.App.2d 345, 349, where, in a section 72 proceeding attacking a divorce decree, it was held that if a litigant does not avail herself of the means of knowledge open to her, she cannot later be heard to say that she was misled by misrepresentation. However, Mrs. Waltrip points out that if she had examined the books of Walson at the time of the decree, even with the aid of an accounting expert, she would have found merely a bookkeeping entry as to the bonus for Waltrip but no actual income received by him at that time beyond the $350 per week to which he testified. Nevertheless, the agreement as to alimony and child support might have been different if Mrs. Waltrip had availed herself of the means of knowledge at her disposal. The trial judge stated correctly that the State has an interest in divorce proceedings, particularly where children are involved. Therefore, although we do not sanction the lack of diligence by Mrs. Waltrip in ascertaining the true income of Waltrip, we do not feel that any such lack of diligence on her part should prejudice the four children of the parties. There was a change of circumstances after the divorce decree was entered because the husband received an additional $13,230 income for the year 1969. Under the circumstances, we think the court had the authority to enter the order compelling Waltrip to pay Mrs. Waltrip $1,800.

Waltrip's other contention on this appeal is that ordering a husband to pay an ex-wife's attorney an allowance for her defense on the husband's initial appeal from a post-decretal order is error. In *Horwitz v. Horwitz* (1970), (Ill.App.2d), 264 N.E.2d 723, the Appellate Court of the First District held that section 15 of the Divorce Act applies only to matters culminating in the original divorce decree and, therefore, does not authorize an allowance of attorney's fees to defend an appeal from a post-decretal order. However, in *Needler v. Needler* (1971), (Ill.App. 2d), 268 N.E.2d 517, the Appellate Court of the First District held that it was proper for the trial court to award an ex-wife attorney's fees in defense of an appeal from a post-decretal order and also held that, where a husband did not request a hearing on his ability or his wife's

inability to pay her attorney's fees, the trial court did not abuse its discretion in awarding attorney's fees to the wife in defense of the husband's appeal. The case of *Riddlesbarger v. Riddlesbarger*, 341 Ill. App. 107, another First District Appellate Court case, was not mentioned in the *Horwitz* case. In *Riddlesbarger*, the court cited at page 116:

"It may be conceded that the power of a court of chancery to allow attorneys' fees for services rendered in the enforcement of a decree and in defense of an appeal stems from the Illinois Divorce Statute. (*Clubb v. Clubb*, 402 Ill. 390.) But the practice and proceedings in divorce cases in Illinois, except as specifically limited by the Divorce Act, are those of courts of chancery, not only in relation to petitions for fees but generally."

and held that the statute on divorce afforded the allowance of fees and expenses necessary to not only defend the decree but to enforce payment thereof and defend appeal. The court pointed out that, because of Riddlesbarger's attitude and conduct after the entry of the decree, Mrs. Riddlesbarger had no choice except to defend the decree and take all steps necessary to enforce its payment. The court further stated at page 119: "Under the circumstances it would be an injustice to hold that she should defray these costs and expenses herself." The *Riddlesbarger* case was cited with approval in *Cross v. Cross*, 5 Ill.2d 456, 467, and the court stated at page 467:

"With reference to appellant's claim for attorney fees, it is evident that the court has power to allow attorney fees for services rendered in the enforcement of the decree, and for matters presented by supplemental bill to enforce rights omitted from the original bill. (*Riddlesbarger v. Riddlesbarger*, 341 Ill.App. 107.) A *fortiori*, where the decree expressly reserves the questions of property rights for future determination, the attorney fees incidental to the adjudication of that issue may be properly allowed."

Section 15 of the Divorce Act does not specifically limit the allowance of attorney's fees for defense of an appeal to an appeal from the divorce decree itself. Had the legislature intended to restrict the allowance of attorney's fees to the defense of an original decree, it could have so stated, but we believe the language used by the legislature in providing fees for defense of an appeal indicates that the legislature contemplated that such fees could be awarded on post-decretal orders as well.

The most recent pronouncement of our Supreme Court on this subject is the case of *Kazubowski v. Kazubowski* (1970), (Ill.2d), 259 N.E.2d 282. There, a number of orders arising out of a divorce action were appealed from, including a second appeal from an order allowing wife supplemental attorneys' fees during husband's appeals. The hus-

band contended that the trial court had no jurisdiction to enter the order allowing wife supplemental attorney's fees because prior to its entry the divorce decree had already been entered so there was no marital status existing between the parties. The court stated that, although the defendant's only defense was an objection to the jurisdiction of the court, "The order for supplemental attorney fees is supported by the law and the evidence, was not obtained in violation of defendant's constitutional rights and should be affirmed."

■■■ We conclude that it was not error to allow the ex-wife attorney's fees for defense of her husband's appeal from the post-decretal order herein involved and believe the trial court did not abuse its discretion by ordering that the attorney's fees be paid by Waltrip in the amount of $500 and before the appeal was decided.

Both orders appealed from were properly entered, and the judgments of the Circuit Court of Du Page County are affirmed.

Judgments affirmed.

GUILD, J. concurs.

Mr. JUSTICE SEIDENFELD dissenting:

I respectfully dissent. The majority has concluded that a change in the husband's circumstances, standing alone, authorizes an equitable division of his bonus. It is conceded also, that the bonus was a bookkeeping entry on the books of the corporation when the decree for divorce was entered and that the husband was guilty of no fraud or concealment. While the result has some appealing qualities in this particular case, it does violence to long accepted rules which authorize a modification of the decree when the needs of a wife and children have increased *and* the means of the father have also increased so as to enable him to make additional contributions. (*Grinton v. Grinton* (1970), (Ill.App.3d); 264 N.E.2d 845, 846; *Patterson v. Patterson* (1960), 28 Ill.App.2d 76, 78; *Kelleher v. Kelleher* (1966), 67 Ill.App.2d 410, 414.) Here no evidence has been presented that the needs of the petitioner or the children have increased.

Further, we can find no precedent for awarding a fixed amount to the wife and children. If the receipt of the bonus has so improved the husband's financial position so that he can now contribute more than called for by the decree, the proper relief is to increase the weekly payments. If the change in his financial position is not shown to be such that he can pay more on a weekly basis, the petition should be denied.

I would reverse the judgment and remand for a further hearing consistent with the principles outlined.